| | |
|---|---|
| TERRENCE J. HANCOCK, et al., <br><br> Plaintiffs, <br><br> v. <br><br> KOZ TRUCKING AND SONS, INC., et al., <br><br> Defendants. | No. 13 CV 790 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

This is an action to collect withdrawal liability under ERISA. The withdrawing company admits it owes what plaintiffs allege, but the parties dispute whether two other companies should be on the hook as well. Both sides have moved for summary judgment. For the following reasons, plaintiffs' motion is granted in-part and denied in-part, and defendants' motion is granted in-part and denied in-part.

**I.    Legal Standard**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On cross-motions for summary judgment, all facts are construed and all reasonable inferences are drawn in favor of the nonmoving party. *Garofalo v. Village of Hazel Crest*, 754 F.3d 428, 430 (7th Cir. 2014).

**II.    Background**

Plaintiffs are trustees of the Local No. 731, International Brotherhood of Teamsters, Excavators and Pavers Pension Trust Fund—a multiemployer pension plan as defined under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* (as amended by the Multiemployer Pension Plan Amendment Acts of 1980). Beginning in 2002, Local No. 731 entered into successive collective bargaining agreements with defendant Koz Trucking & Sons, Inc., which required the company to pay into the Fund on behalf of certain of its employees. [120] ¶ 7.[1] Throughout this contractual relationship, Koz & Sons was 100% owned by Nancy Kozlowski. *Id.* ¶ 6. Koz & Sons is the withdrawing company in this case and admits that it is liable to plaintiffs. [118].

Phillip A. Kozlowski, Nancy's husband, worked as a truck driver for Koz & Sons for about 15 years. [120] ¶ 53. At some point in 2007 or 2008, Phillip stopped driving a truck for the company and started dispatching for it instead. *Id.* ¶¶ 54-59. Phillip was not paid for his dispatching services, but the company did contribute $15,000 to the Fund on his behalf in 2008. *Id.* ¶¶ 60, 64.

---

[1] Citations to [120] refer to the document's first 66 paragraphs only.

In addition to Koz & Sons, Nancy and Phillip owned three companies between the two of them in 2008. All three of these companies are defendants in this case. The first was a travel agency called Dream Vacations Unlimited, LLC. *Id*. ¶ 32. The record does not contain much about Dream Vacations other than the fact that Nancy owned 90% of it. *Id*. ¶ 34. The second company, SPC Investments LLC, was something of a property management company, organized—at least in part—to develop and maintain the Kozlowskis' properties in Wisconsin. [123] ¶ 1. Nancy owned 51% of SPC and Phillip owned the rest. [120] ¶ 36. The third company, Koz Trucking Inc. (not to be confused with Koz Trucking & Sons, Inc.), was owned solely by Phillip. *Id*. ¶ 50. Not only did Nancy own no part of Koz Trucking, she also never managed it or worked for it. [123] ¶¶ 20-21.

Plaintiffs' second amended complaint contains two counts. Count I, which is brought under 29 U.S.C. §§ 1132(g)(2) and 1451(b), seeks a judgment against Koz & Sons for the 2008 withdrawal liability, while Count II seeks to hold Dream Vacations, SPC, and Koz Trucking jointly and severally liable on the theory they were part of the same control group as Koz & Sons.

Plaintiffs have moved for summary judgment on Counts I and II. Koz Trucking and SPC have moved for summary judgment on Count II. Koz & Sons and Dream Vacations have neither moved for summary judgment nor responded to plaintiffs' motion against them.

### III. Analysis

#### A. Defendants Koz & Sons and Dream Vacations

Defendants Koz & Sons and Dream Vacations have agreed to judgment being entered against them. [118]. Plaintiffs' motion is therefore granted on Count I in its entirety, and granted on Count II as to Dream Vacations.

#### B. Defendant Koz Trucking

"To protect the solvency of multiemployer pension plans, the Multiemployer Pension Plan Amendments Act of 1980, also known as the MPAA, contains broad provisions that pierce the usual legal barriers between affiliated but legally distinct businesses." *Central States v. SCOFBP, LLC*, 668 F.3d 873, 876 (7th Cir. 2011). "Under the MPAA, all 'trades or businesses' under 'common control' are treated as constituting a single employer for purposes of determining withdrawal liability." *Id.* (citing 29 U.S.C. § 1301(b)(1)). "Each trade or business under common control is jointly and severally liable for any withdrawal liability of any other." *SCOFBP*, 668 F.3d at 876.

Koz Trucking (the one owned by Phillip) admits it was a trade or business in 2008, but denies that it was under "common control" with Koz & Sons (the one owned by Nancy). [121] at 9. "The MPAA draws its definition of 'common control' from the regulations promulgated under § 414(c) of the Internal Revenue Code." *SCOFBP*, 668 F.3d at 880; *see also* 26 U.S.C. § 414(c). "The Internal Revenue regulations set out three ways a group of trades or businesses can be commonly controlled—a

parent-subsidiary group, a brother-sister group, or a 'combined' group consisting of both parent-subsidiary and brother-sister relationships." *Id*. (citing 26 C.F.R. § 1.414(c)-2(a)). Here, plaintiffs seek to prove only that Koz Trucking and Koz & Sons made up a brother-sister group. [111] at 15.

"The term 'brother-sister group of trades or businesses under common control' means two or more organizations conducting trades or businesses if (i) the same five or fewer persons . . . own . . . a controlling interest in each organization, and (ii) . . . such persons are in effective control of each organization." 26 C.F.R. § 1.414(c)-2(c)(1). "[T]he phrase 'controlling interest' means . . . ownership of stock possessing at least 80 percent of total combined voting power of all classes of stock entitled to vote[,] . . . or at least 80 percent of the total value of shares of all classes of stock . . . ." *Id*. § 1.414(c)-2(b)(2)(i). "[P]ersons are in 'effective control' of an organization if . . . such persons own stock possessing more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock . . . ." *Id*. § 1.414(c)-2(c)(2)(i).

In measuring the size of a person's stock ownership, the so-called Spousal Attribution Rule directs that the person "be considered to own an interest owned . . . by or for his or her spouse." *Id*. § 1.414(c)-4(b)(5)(i). At the same time, though, the Spousal Attribution *Exception* states that:

> An individual shall not be considered to own an interest in an organization owned . . . by or for his or her spouse on any day of a taxable year of such organization, provided that each of the following conditions are satisfied with respect to such taxable year:

5

(A) Such individual does not, at any time during such taxable year, own directly any interest in such organization;

(B) Such individual is not a member of the board of directors, a fiduciary, or an employee of such organization and does not participate in the management of such organization at any time during such taxable year;

(C) Not more than 50 percent of such organization's gross income for such taxable year was derived from royalties, rents, dividends, interest, and annuities; and

(D) Such interest in such organization is not, at any time during such taxable year, subject to conditions which substantially restrict or limit the spouse's right to dispose of such interest and which run in favor of the individual or the individual's children who have not attained the age of 21 years. The principles of § 1.414(c)–3(d)(6)(i) shall apply in determining whether a condition is a condition described in the preceding sentence.

*Id.* § 1.414(c)-4(b)(5)(ii).

Here, the undisputed evidence shows that Phillip owned 100% of Koz Trucking, Nancy owned 100% of Koz & Sons, and they were married. So, unless the Spousal Attribution Exception applies, the Spousal Attribution Rule requires that Phillip be considered as having owned 100% of Koz & Sons, and Nancy as having owned 100% of Koz Trucking. In turn, Koz Trucking would be liable for Koz & Sons's withdrawal liability.

Plaintiffs do not dispute that the Spousal Attribution Exception applies to Nancy. Nancy never owned any shares of Koz Trucking. She was never a director, officer, manager, or employee of Koz Trucking. Not more than 50 percent of Koz Trucking's gross income was derived from royalties, rents, dividends, interest, or

6

annuities. And Phillip's interest in Koz Trucking was not subject to conditions which substantially restricted or limited his right to dispose of such interest. As a result, for the purposes of determining common control, Nancy is not considered as having had any control over Koz Trucking.

Defendants believe Nancy's lack of common control is dispositive. They argue that—as the actual owner of the withdrawing company—she must be the focus of the analysis, and that a finding of "common control" cannot be based on Phillip as a matter of law. But defendants cite no authority in support of this argument. And, what is more, their proposal runs contrary to the plain terms of 26 C.F.R. §§ 1.414(c)-2 and -4, which contain no such limitations on who may serve as the common controller. If Phillip is considered an owner of Koz & Sons, then Koz Trucking is a sibling of Koz & Sons—they are a brother-sister group.

In *Central States v. Johnson*—and then again in *Chicago Truck Drivers v. Steinberg*—the Seventh Circuit acknowledged the need to protect an "innocent spouse" from being made liable for (as the facts were in both cases) her husband's common ownership of a withdrawing company and a sole proprietorship. *Johnson*, 991 F.2d 387, 392 (7th Cir. 1993); *Steinberg*, 32 F.3d 269, 271-72 (7th Cir. 1994). In both cases, the court ruled that a spouse will not be held liable for withdrawal liability on the basis of spousal attribution, unless there is a showing that the spouse "knowingly joined the undertaking that ultimately incurred the withdrawal

7

liability." *Johnson*, 991 F.2d at 392 ("the central issue in this case is [the spouse's] intent to form a partnership with her husband").

Nevertheless, the case at bar does not warrant application of *Johnson* and *Steinberg* because those cases ultimately asked only, "Who should be liable for the non-limited-liability companies in the control group?" and not, as we ask here, "Which companies are in the control group to begin with?" Thus, the next question remains whether the attribution rule applies to Phillip.[2]

It is undisputed that (1) Phillip did not own any interest in Koz & Sons; (2) not more than 50 percent of Koz & Sons's gross income was derived from the covered sources; and (3) Nancy's interest in Koz & Sons was not subject to conditions which substantially restricted or limited her right to dispose of it. The parties dispute, however, whether the evidence requires the conclusion that Phillip was (or was not) a Koz & Sons employee and manager. Defendants argue that the employee/management prong of the Spousal Attribution Exception is satisfied because the evidence shows only that Phillip was a volunteer who performed ministerial work as a dispatcher. Plaintiffs say the undisputed evidence shows the contrary.

---

[2] To the extent this case does call for *Johnson*-like scrutiny, that function is being performed—as will be seen—by the second prong of the Spousal Attribution Exception (i.e., whether "[s]uch individual is not a member of the board of directors, a fiduciary, or an employee of such organization and does not participate in the management of such organization at any time during such taxable year.").

8

The parties disagree about the test to use to determine if Phillip was a Koz & Sons employee. Defendants suggest that, under *Mazzei v. Rock-n-Around Trucking, Inc.*, 246 F.3d 956 (7th Cir. 2001) and *Nationwide Mutual Insurance Company v. Darden*, 503 U.S. 318 (1992), the correct test to apply is the common-law test for agency. By contrast, plaintiffs offer a test for determining if someone is a volunteer. Since defendants admit Phillip was not an independent contractor, the argument goes, a finding that he was not a volunteer necessarily means he was an employee.

I do not reach this legal question, however. Whether Phillip was an employee of Koz & Sons or not, the record requires the finding that he did not participate in the company's management in 2008. Koz & Sons employed Phillip as a truck driver for approximately 15 years. He ceased driving trucks for the company in either 2007 or 2008. Phillip then started "helping" Koz & Sons by acting as a dispatcher. In that role, Phillip would receive information about jobs from his son—who Nancy was training to take over the company—and then Phillip would call truck drivers or independent brokers and give them the opportunity to take the job. The truck drivers and independent brokers could accept or reject the jobs as they wished. Phillip had no discretion as a dispatcher.

Plaintiffs' argument in favor of finding that Phillip participated in the management is that "[d]irecting truck drivers to certain job sites to perform trucking jobs is management of Koz and Sons' operations." [111] at 19. While one could imagine a scenario in which this was true, the undisputed record in this case shows

9

Phillip did no more than parrot information given to him by his son. Further, Phillip can hardly be said to have directed the truck drivers, since they were under no obligation to accept his instructions. No factfinder could reasonably conclude that Phillip's responsibilities were managerial.

On Count II, as to Koz Trucking, plaintiffs' motion is denied and defendants' motion is granted.

### C.    Defendant SPC

SPC admits it was under common control with Koz & Sons, but denies that it is a trade or business. [121] at 5. "The phrase 'trade or business' is not defined by section 1301(b)(1). To apply the term under the MPPAA, [the Seventh Circuit has] adopted the test adopted by the Supreme Court for other tax purposes in *Commissioner of Internal Revenue v. Groetzinger*, 480 U.S. 23, 35, 107 S.Ct. 980, 94 L.Ed.2d 25 (1987)." *Central States v. Messina Products, LLC*, 706 F.3d 874, 878 (7th Cir. 2013). "The '*Groetzinger* test' requires that for economic activity to be considered the operation of a trade or business the activity must be performed (1) for the primary purpose of income or profit; and (2) with continuity and regularity." *Id*.

Under the first prong, leasing apartments will not be deemed to be primarily for income or profit where evidence shows an alternative primary objective, such as having the added security of tenants. *Central States v. White*, 258 F.3d 636, 643 (7th Cir. 2001). At the same time, "[r]eal estate activity unrelated to the business of the withdrawing employer also can be 'for the primary purpose of income or profit' where

that activity 'increases equity, appreciates value, and generates tax deductions that reduce the overall tax burden,' even if the activity does not produce a net gain." *Messina*, 706 F.3d at 884.

Under the second prong, "[a]ctions of a person, such as negotiating leases, researching properties, maintaining or repairing properties, etc., are business or trade conduct and thus are appropriately considered in determining whether the continuity and regularity" elements are satisfied. *Central States v. Fulkerson*, 238 F.3d 891, 895 (7th Cir. 2001). Mere possession of property, however, "is the hallmark of an investment," and this is especially true when the investor spends little to no time each year tending to the properties. *Id.* at 895-96. By contrast, activity such as claiming deductions for business expenses (e.g., advertising, utilities, maintenance, repairs, or depreciation), donning a legal business form, investing a substantial amount of personal time, and hiring employees all suggests the continuity and regularity of a trade or business. *SCOFBP*, 668 F.3d at 877-79; *McDougall v. Pioneer Ranch Ltd. Partnership*, 494 F.3d 571, 577-78 (7th Cir. 2007); *Central States v. Personnel, Inc.*, 974 F.2d 789, 794-96 (7th Cir. 1992).

Finally, it militates against finding the subject-conduct to be a trade or business when there is "absolutely no possibility" that the conduct was being used to "dissipate or fractionalize" the assets of the withdrawing company. *White*, 258 F.3d at 644.

Here, the undisputed record demonstrates that SPC was a trade or business capable of dissipating the assets of Koz & Sons. While defendants baldly claim the enterprise was not primarily intended to produce income, it is clear from SPC's tax records that it was meant to "increases equity, appreciat[e] value, and generat[e] tax deductions that reduce[d] the overall tax burden[.]" *Messina*, 706 F.3d at 884. SPC took on a legal business form (equipped with a Federal Employer Identification Number), obtained, maintained, repaired, and developed property, collected rents, hired an accountant, and purchased a Ford pickup truck for which it took additional business deductions.

Further, Nancy testified that Koz & Sons made a $22,555 loan to SPC. This behavior not only weighs in favor of finding SPC to be a trade or business, it also demonstrates that SPC had the capacity to dissipate Koz & Son's assets. Finally, even ignoring all the evidence above, SPC plainly admitted in its responses to plaintiffs' requests for admission that it "regularly and continuously engaged in for-profit business activities."

On Count II, as to SPC, plaintiffs' motion is granted and defendants' motion is denied.[3]

---

[3] I note that, in obtaining this judgment against SPC, plaintiffs may have accomplished very little. Although Nancy (at one point) testified that SPC owned the Wisconsin properties, and though SPC listed the properties on their tax returns, public records show the properties have been in the Kozlowskis' names from the beginning. The weight of Nancy's testimony confirmed this point.

## IV. Conclusion

Plaintiffs' motion for summary judgment [109] is granted in-part and denied in-part. Defendants' motion for summary judgment [119] is granted in-part and denied in-part. Plaintiffs are directed to submit a proposed order of judgment by March 28, 2015.


ENTER:

Date:   3/3/15

Manish S. Shah
U.S. District Judge